UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

In re:

Stanislav Ougrinov Ilyev,                    Case No. 17-12987-KHK
                                             (Chapter 13)
    Debtor.

MEMORANDUM OPINION
AND ORDER GRANTING TRUSTEE'S
MOTION TO MODIFY DEBTOR'S
CONFIRMED CHPATER 13 PLAN

    This matter initially came before the Court on the Debtor's Motion to Approve a Proposed COVID-19 Payment Deferral. Docket No. 178. The Chapter 13 Trustee filed a Response and a Motion to Modify the Debtor's confirmed Chapter 13 Plan under Bankruptcy Code Section 1329. Docket No. 180. The Debtor filed a Response to the Trustee's Motion. Docket No. 181. Both parties filed briefs in support of their respective positions. Docket Nos. 191, 194. The Court heard the evidence and the parties' arguments on July 14, 2022, during which the Debtor withdrew his Motion.

    For the reasons stated below, the Court will grant the Trustee's Motion.

**Findings of Fact**

    The Court, having heard the evidence, makes the following findings of fact.

A. *The Debtor's Confirmed Chapter 13 Plan.*

    1.    The Debtor, Stanislav O. Ilyev, filed a Voluntary Petition under Chapter 13 with this Court on September 1, 2017. Docket No. 1. He is a Systems Administrator with a law firm in Falls Church, Virginia. Docket No. 133, Schedule I.

2.  The Debtor is a below-median debtor. Docket No. 18-1, Form 122-C1.[1]

3.  The case was contentious. After the Debtor filed five Chapter 13 Plans (Docket Nos. 20, 41, 82, 95, 133), all of which drew objections from his creditors and the Chapter 13 Trustee, the Court confirmed the Debtor's Amended Chapter 13 Plan in April 2019. Docket No. 142.

4.  The confirmed Amended Plan called for the Debtor to pay $6,950.00 to the Trustee (which he had already paid by the time the Plan was confirmed), plus $420 per month for the remaining 43 months of the Plan. Docket No. 133, ¶ 2. The Amended Plan proposed a 4% return to the Debtor's unsecured creditors. *Id.*, ¶ 5.[2]

5.  The Amended Plan called for the Debtor to retain his property at 45476 Baggett Terrace, Sterling, Virginia 20166 ("the Property") and to continue to make the monthly mortgage payments. *Id.*, ¶ 6(A).

6.  On Schedule J attached to the confirmed Amended Plan, the Debtor took a deduction in the amount of $1,625.00 per month for the payment of his mortgage. *Id.*, Schedule J, Line 4.

B. *The Debtor Receives a Covid-19 Forbearance.*

7.  On April 26, 2022, the Debtor filed a Motion to Approve Proposed Covid-19 Payment Deferral. Docket No. 178.

---

[1] Being below median has two consequences. First, the Debtor's expenses for purposes of determining his disposable income are his actual expenses as stated on Schedule J, as opposed to Means Test expenses as stated on Schedule 122-C2. 11 U.S.C. § 1325(b). Second, the Debtor's commitment period is 36 months, as opposed to 60 months for above-median debtors. 11 U.S.C. § 1322(d). The 36 months can be extended for up to 60 months for cause. *Id.*

[2] According to the Amended Plan, there were only $2,080.00 in arrearages on the home mortgage at the time. *Id.*, ¶ 6(A). This was consistent with the Proof of Claim filed by Wells Fargo in the case. Proof of Claim No. 3-1, ¶ 9.

8. In his Motion, the Debtor stated: "During the Covid-19 pandemic, the debtor accepted a forbearance from his mortgage company and did not pay his mortgage for a period of 18 months." *Id.*, ¶ 1.

9. According to the Notice from Wells Fargo, the Debtor was to resume making regular monthly mortgage payments as of February 1, 2022. *Id.*, Ex. 1. This meant that the Debtor was not making mortgage payments from September 2020 to February 2022.

10. The Trustee filed an Opposition and Motion to Modify the Debtor's Plan pursuant to Bankruptcy Code Section 1329. Docket No. 180.

11. In his Response to the Trustee's Motion, the Debtor argued that he will have to repay the deferred mortgage payments at some point, and that that the Trustee had no authority to seek a retroactive modification of the confirmed Plan. Docket No. 181.

12. The Trustee requested expedited discovery from the Debtor, which the Court granted. Docket No. 184.

13. The Trustee served the Debtor with discovery requests, seeking to determine what the Debtor did, if anything, with the deferred mortgage payments. Docket No. 185.

14. The Debtor did not respond to the Trustee's discovery requests. Rather, he sent an e-mail to his counsel, which his counsel forwarded to the Trustee. Tr. Ex. 1. In his e-mail, the Debtor stated that he spent $17,000.00 on various expenditures, including IT training for his wife, child care for his daughter and acting classes for his step-daughter. *Id.* He claimed, with respect to the remaining $11,000.00 or so, that he has outstanding medical bills of $10,000.00. He did not, however, provide any supporting documentation to the Trustee, nor did he present any evidence of such expenses at the hearing on July 14, 2022.

15. In fact, the Debtor did not present any evidence at the hearing that he was adversely affected by Covid at all. He is still employed by the law firm and does not appear to have suffered any decrease in income as a result of Covid (it is not clear to the Court why the Debtor applied for Covid relief in the first place).

16. The Debtor withdrew his Motion to Approve Proposed Covid-19 Payment Deferral in open court on July 14th.

## Conclusions of Law

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmation of plans).

**I.    Property of the Estate and Plan Modifications.**

When a bankruptcy case is filed, an estate is created. 11 U.S.C. § 541(a). The estate consists of all non-exempt property owned by the debtor on the petition date. *Id*. ("all the following property, wherever located and by whomever held"). There are exceptions. For example, property in which the debtor holds bare legal title, and the beneficial ownership rests with another person, is not property of the estate. 11 U.S.C. § 541(d). Further, property that the debtor acquires within 180 days of the bankruptcy petition by devise, bequest or inheritance, through a property settlement agreement or a divorce decree, or as the proceeds of life insurance policies or death benefit plans, is property of the bankruptcy estate. 11 U.S.C. § 541(a)(5).

Chapter 13 has an important, additional requirement. All non-exempt property that the debtor acquires after the commencement of the case becomes property of the bankruptcy estate. 11 U.S.C. § 1306(a). The Fourth Circuit has held that property acquired after the commencement of a Chapter 13 case becomes property of the estate whether or not it was acquired within the

180-day limit of Section 541(a)(5). *Carroll v. Logan*, 735 F.3d 147, 152 (4th Cir. 2013). In other words, Section 1306(a) is broader than Section 541(a)(5), and includes all non-exempt, post-petition property acquired by the debtor during the course of the case. *Id.*

Prior to *Carroll v. Logan,* the Fourth Circuit held that Chapter 13 debtors have standing to maintain non-bankruptcy causes of action in their own name, without joining the Chapter 13 trustee as a party. *Wilson v. Dollar General Stores, Inc*., 717 F.3d 337, 343 (4th Cir. 2013).

With respect to plan modifications, a modification is justified under Bankruptcy Code Section 1329 when the debtor experiences a "substantial and unanticipated" change in financial circumstances. *Murphy v. O'Donnell (In re Murphy),* 474 F.3d 143, 148 (4th Cir. 2007). Whether a change in financial condition is significant enough to be considered substantial depends on the facts and circumstances of each case. *See, e.g., Martinez v. Gorman (In re Martinez),* 2022 WL 2165994 (E.D. Va. 2022) (holding that debtor's mortgage refinance was unanticipated, but holding that $300 in monthly mortgage savings was not substantial: "A monthly savings of $300 a month amounts to less than a three percent increase in Debtor's monthly income; this is a modest increase, not a substantial change"); *Goodman v. Gorman (In re Goodman),* 534 B.R. 656 (E.D. Va. 2015) (debtor's inheritance of $36,000 was substantial and unanticipated).

II. **The Duty of Disclosure in Chapter 13.**

When a debtor files a bankruptcy case, he or she is required to file accurate and complete Schedules, listing all of the debtor's assets and liabilities. 11 U.S.C. 521; Bankruptcy Rule 1007. Bankruptcy Rule 1007(h) requires debtors to file Amended Schedules disclosing the kind of property described in Section 541(a)(5) (which applies in both Chapter 7 and Chapter 13 cases), "within 14 days after the information comes to the debtor's knowledge." The Rule is limited,

5

however, to Section 541(a)(5) property, and does not cover the broader Section 1306(a) type of property (which, as noted, applies at any time in the case and is not limited as to time).

Debtors also have a duty of cooperation with the Trustee. Section 521(a)(3) requires debtors to cooperate with trustees "as necessary to enable the trustee to perform the trustee's duties" under Title 11. 11 U.S.C. § 521(a)(3). Bankruptcy Rule 4002(a)(4) requires the debtor to "cooperate with the trustee" in the administration of the estate.

The duty of a debtor to disclose post-petition assets has been the subject of some controversy in the case law. Bankruptcy Judge Waites of the District of South Carolina has written a thoughtful opinion in which he concluded that there is no duty of disclosure in the post-petition environment under Chapter 13. *In re Boyd*, 618 B.R. 133 (Bankr. D. S.C. 2020). The *Boyd* case involved a Chapter 13 debtor who had completed his plan, and had received his discharge. The case was closed after the Trustee filed her Final Report and Accounting. The debtor had been involved in a car accident while the case was pending, and filed a lawsuit in State court to recover damages. When the defendants moved for summary judgment in the State court on the ground of judicial estoppel (because the claim had not been disclosed in the bankruptcy court), the debtor moved to reopen his case. The bankruptcy court granted the debtor's motion to reopen, without opposition. The debtor filed Amended Schedules B and C, listing the personal injury claim and asserting an exemption under State law for the same. The State court defendants then moved to reconsider the reopening of the case.

Judge Waites, after surveying the case law and the relevant treatises, held that there was no duty to disclose a post-petition cause of action in a Chapter 13 case. 618 B.R., at 156. He further held that the State court defendants lacked standing to object to the reopening of the case to list and exempt the cause of action, because they were not creditors and had no pecuniary

interest in the bankruptcy case itself. *Id.,* at 161. In so holding, he found the interests of the State court defendants to be "too remote, too hypothetical, and too speculative" to establish standing. *Id.*, at 159.[3]

The *Boyd* opinion is distinguishable factually from this case for a number of reasons. First, *Boyd* involved a case that was already closed, and the debtor had received his discharge. The State court creditors lacked standing to object to the reopening. The case involved an exempt asset, one that the Chapter 13 Trustee would never administer for the benefit of the creditors (and one that the debtor had standing to maintain in State court, under *Wilson*). This case, on the other hand, has never been closed, and involves the Debtor's non-exempt disposable income. The Chapter 13 Trustee inarguably has standing to be heard on matters of plan confirmation and disposable income.

Other courts, including this one, have held that debtors do in fact have an obligation to disclose assets acquired post-petition to the Trustee. *In re Cortez*, 457 F.3d 448, 458 (5th Cir. 2006) ("As a practical matter, then, the debtors would be obligated to amend their schedules to disclose any post-petition income under Chapter 13."); *see In re Zvoch*, 618 B.R. 734, 739 (Bankr. W.D. Pa. 2020) ("A chapter 13 case does not end at plan confirmation, and neither does a debtor's responsibilities… Lest there be any confusion, this means a chapter 13 debtor has a 'continuing duty to disclose changes in [their] financial situation during the pendency of [their] case'"); *In re Padula*, 542 B.R. 753, 760 (Bankr. E.D. Va. 2015) ("This is not to say that there are never any consequences for a Chapter 13 debtor, should she fail to disclose a post-petition cause of action in her case. Depending on the circumstances of the particular case, the Court can dismiss her case on bad faith grounds for a failure to disclose a cause of action."); *In re Pautin*,

---

[3] Judge Waites went on to address the merits of the Motion to Reopen and the debtor's claim of exemption, despite the objecting parties' lack of standing. Ultimately, he held that the case was properly reopened, and that the debtor's claim of exemption would be allowed.

7

521 B.R. 754, 763 (Bankr. W.D. Tex. 2014) (court finding "that Debtor's failure to report her additional earnings and tax refunds, absent a specific demand by the Trustee, is not good faith").

In the Court's view, opinions like *Boyd*, while correct in holding that the Code and Rules do not contain an independent duty to amend the debtor's schedules post-petition, place insufficient weight on the duty of cooperation under Section 521(a)(3) and Rule 4002(a)(4). This case presents a perfect example. The Debtor obtained relief from his mortgage for eighteen months. At $1,625.00 per month, that represents a deferral totaling $29,250.00. The Debtor never informed the Chapter 13 Trustee of the deferral until the mortgagee requested that the Debtor seek an order from the Court approving the same. In the meantime, the Debtor (who was employed at his law firm the entire time) spent $17,000 of the funds on his wife's education, child care and acting lessons for his step-daughter. Tr. Ex. 1.

The Debtor, and some of the case law, suggest that it might be too difficult to draw the line for the types of changes that must be disclosed. The Fourth Circuit, however, already has provided us with the benchmark in *Murphy* – changes in the debtor's financial condition need to be disclosed to the Trustee when they are "substantial and unanticipated." Minor fluctuations need not be reported; major ones do.[4]

The duty of cooperation under Section 521(a)(3) and Rule 4002(a)(4) includes a duty of disclosure for substantial and unanticipated changes in the Debtor's financial condition. The Chapter 13 Trustee cannot perform his duties, and the Court is not in a position to decide whether a particular change in financial circumstances may be substantial and unanticipated, without disclosure. As discussed below, the Court finds that the Covid mortgage deferral constitutes a substantial and unanticipated change.  Therefore, the Court finds that under Section

---

[4] The most common change in circumstances, whether positive or negative, a material change in the debtor's income, will be apparent from the debtor's tax returns. In this District, debtors are required to produce their tax returns to the Chapter 13 Trustee annually, post-confirmation.

521(a)(3) and Rule 4002(a)(4), the Debtor had a duty to disclose the Covid mortgage deferral to the Chapter 13 Trustee.

### III.   The Trustee's Motion to Modify in This Case.

Turning to the application of Section 1329, the Court finds that the Debtor's eighteen-month mortgage loan deferral was both substantial and unanticipated. It was unanticipated because no one could have predicted the outbreak of Covid, and the resulting economic consequences. Before Covid, mortgage loan deferrals and modifications were much more difficult for borrowers to obtain. The change also was substantial. A savings of $1,625 per month represents 30% of the Debtor's gross monthly income of $5,606. Docket No. 133, Schedule I, Line 12. (In *Gonzales*, the Debtor's $300 per month savings represented less than three percent of his monthly income.) Further, the $1,625 mortgage payment was (not surprisingly) the single largest item on the Debtor's Schedule J (Monthly Expenses), and represents 32% of the total monthly expenses ($5,086) on Schedule J. This was a substantial change in the Debtor's financial circumstances, for eighteen months.

The question then becomes the remedy, if any, to be applied in this case. The Debtor argues that, notwithstanding his lack of disclosure, the Court cannot impose a retroactive plan modification, relying on cases such as *In re Pautin*, 521 B.R. 754 (Bankr W.D. Tex. 2014), and *In re Alonso*, 570 B.R. 622 (Bankr. D. Id. 2017). These cases rejected what were described as retroactive plan modifications, primarily on the ground that the debtors did not have the funds, and the court cannot confirm a modified plan that is not feasible. See, e.g., *In re Brown*, 2022 WL 193369 (Bankr. M.D. Fla. 2022) ("Modification is not 'practicable' [for purposes of a hardship discharge under Section 1328] if there is no source of income to fund the modified plan, or if the modified plan would require debtors to make payments beyond the five-year statutory

limit in § 1329(c), or if debtors are unable otherwise to meet the Code's requirements made applicable by § 1329(b).")[5]

The Debtor in this case filed his Voluntary Petition in September 2017. His sixty-month Plan will expire in October 2022, so he only has approximately three or four months to complete his plan. It might be unrealistic to expect the Debtor to pay the Trustee $29,250.00 in the next three or four months. On the other hand, the Debtor received the Covid forbearance in December 2021. Docket No. 178-1, Ex. 1. More importantly, the Debtor was to resume payments on February 1, 2022, so he had ceased making his monthly mortgage payments eighteen months before that date, in *September 2020. Id.*, pp. 2-3. The Debtor himself filed for approval of the same in April 2022. Docket No. 178. The Trustee made his position known on May 2, 2022. Docket No. 180. It is difficult for the Court to accept that the Debtor, who failed to disclose the forbearance to the Trustee for the entire eighteen-month forbearance period, can now be heard to say that a plan modification is infeasible because he has only three or four months left in his Plan.

The Court will order the Debtor to file a Modified Plan. Presumably, the $11,000 is still available for distribution to the creditors. Further, some of the $17,000 can be repaid in the remaining life of the Plan. The Plan does not have to recapture the entire $29,250.00, but it must be a good faith effort to repay the lion's share of the funds to the Trustee. The Court will view the Debtor's Modified Plan with an eye to both feasibility and good faith. If the Debtor elects not to file a Modified Plan, his case may be dismissed.

The Court, therefore, will grant the Trustee's Motion to Modify.

**Conclusion**

---

[5] Section 1329(b) requires that modified plans conform with Section 1325(a) of the Code, which includes the requirement of feasibility. 11 U.S.C. §§ 1329(b)(1), 1325(a)(6).

It is therefore **ORDERED**:

A. The Trustee's Motion to Modify is granted. The Debtor will file a Modified Plan within 15 days of the entry of this Opinion and Order. The failure to do so may result in dismissal of the case.

B. The Clerk will mail copies of this Opinion and Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Jul 26 2022

/s/ Brian F Kenney
Brian F. Kenney
United States Bankruptcy Judge
Entered On Docket: July 26, 2022

**Electronic Copies to:**

Thomas P. Gorman
*Chapter 13 Trustee*

John P. Fitzgerald, III
*U.S. Trustee*

Robert S. Brandt
*Counsel to the Debtor*